430 So.2d 900 (1982)
Russell H. POTTS, Petitioner,
v.
STATE of Florida, Respondent.
No. 61352.
Supreme Court of Florida.
December 16, 1982.
Jerry Hill, Public Defender and Allyn Giambalvo, Asst. Public Defender, Tenth Judicial Circuit, Clearwater, for petitioner.
Jim Smith, Atty. Gen. and Frank Lester Adams, III, Asst. Atty. Gen., Tampa, for respondent.
EHRLICH, Justice.
This cause is before the Court on petition for review of a district court of appeal decision on the ground of express and direct conflict. We have jurisdiction.[1] At issue is whether or not an aider or abettor to the substantive crime may be convicted of a greater crime than his confederate/principal. The decision under review, Potts v. State, 403 So.2d 443 (Fla. 2d DCA 1981), conflicts with Turner v. State, 369 So.2d 670 (Fla. 1st DCA 1979). We affirm Potts and disapprove Turner.
Petitioner and one Lawrence Scott Ramirez participated in the burglary of a Clearwater car dealer. Ramirez actually conducted the burglary during which he placed his hand on an employee, guided him to a restroom, and instructed him to remain there. Petitioner's participation in the crime consisted of driving Ramirez to the scene, waiting nearby until summoned by Ramirez, then driving the get-away vehicle.
*901 Both were charged with burglary under sections 810.02 and 777.011, Florida Statutes (1977). Ramirez was tried separately, found guilty of simple burglary, and received a maximum sentence of five years. Petitioner was tried and found guilty of burglary of a structure wherein an assault was committed and received a sentence of thirty years.
The Second District Court of Appeal rejected petitioner's contention that he could not be convicted of being a principal in the first degree to the crime of aiding and abetting a burglary with assault when the principal perpetrator was only convicted of simple burglary. The judgment and sentence were set aside and remanded for a new trial on other grounds, but Potts nevertheless sought review in this Court on that issue only. Petitioner makes two arguments to which we will respond.
Potts was charged under the aider-abettor statute which makes all participants in a crime principals in the first degree. § 777.011, Fla. Stat. (1977). The correct interpretation of that statute, he argues, is the one given by the first district in its opinion in Turner.
The history of the culpability of the aider-abettor is an intricate and involved one. See Annot., 9 A.L.R.4th 972 (1981). The courts have waivered on the issue. At common law jurists went to great lengths to classify and define the degree of culpability of each of the actors in the crime and four categories arose. These were: a) principals in the first degree, who actually committed the offense; b) principals in the second degree, who were actually or constructively at the scene of the crime and aided or abetted in its commission; c) accessories before the fact, who aided or abetted the crime but were not present at its commission; and d) accessories after the fact, who rendered assistance after the crime was committed.
Because at early common law all felonies were punishable by death, judges found it particularly hard to apply this harsh penalty to the aider or abettor who was an accessory before the fact. W. LaFave & A. Scott, Criminal Law 449 (1972). Consequently, procedural rules developed that tended to shield the accessories from prosecution in certain instances. Among these rules was the one that an accessory could not be convicted without the prior conviction of the principal offender. Therefore, the principal's disappearance, death or acquittal automatically served to release the accessory, and the pardon or reversal of a conviction of the principal operated in the same fashion. Indeed, "[a]n accessory follows, like a shadow, his principal." 1 J. Bishop, Criminal Law § 666 (8th ed. 1892).
As the law developed and punishment for felony convictions became less harsh the necessity for this equitable procedural bar became a nullity. Statutes in England and the United States were enacted to overcome these judge-made rules and permit the trial and conviction of accessories before the fact independent of their principals. Florida ventured into the legislative arena as early as 1868[2] to pass legislation defining the accessory before the fact and the aider-abettor, and providing for punishment independent of the conviction of the principal.[3]
Despite the legislature's efforts the courts continued to draw the line between the principal in the second degree and the accessory before the fact. Montague v. State, 17 Fla. 662 (1880). Another distinction began to develop as to whether or not the accessory was charged under the statute or at common law. Flynn v. State, 86 Fla. 467, 98 So. 76 (1923). And though the courts were willing to place the principal in the first degree and the principal in the second degree in the same shoes, the accessory before the fact was treated quite differently. Neumann v. State, 116 Fla. 98, 156 So. 237 (1934); see also State v. Peel, 111 So.2d 728 (Fla. 2d DCA 1959).
*902 In an apparent effort to clear up this growing problem of distinguishing between the accessories and principals, the legislature passed Ch. 57-310, Laws of Florida, in 1957.[4] This declared that principals in the first and second degree and accessories before the fact were treated equally and all were made principals in the first degree.
This statute was interpreted by Blackburn v. State, 314 So.2d 634 (Fla. 4th DCA 1975), cert. denied, 334 So.2d 603 (Fla.), cert. denied, 429 U.S. 864, 97 S.Ct. 170, 50 L.Ed.2d 142 (1976). The age-old argument about whether or not the aider or abettor could be convicted while the principal was acquitted was dealt with by the Blackburn court as follows:
Some of the cases cited by appellant appear to require a conviction of the original offender as a predicate to conviction of an aider and abettor. However, this is no longer the law. Those cases were limited to prosecution of accessories before the fact. The enactment of § 776.011 of the Florida Statutes eliminated this requirement, under the peculiar circumstances where it existed.
314 So.2d at 638. That statute remained intact until 1974 when as part of a major revision of the criminal code the language was changed.[5] The following underscored language was added:
776 7.011 Principal in first degree.  Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he is or is not actually or constructively present at the commission of such offense.
It is this amending language that is the crux of the holding in Turner, and the cornerstone of petitioner's argument. Petitioner asserts that by adding this language the legislature intended to change the statute and add a new element to the crime. He further argues that in order for the aider-abettor to be convicted of a particular crime, the primary perpetrator also has to be convicted of the same crime. In this case, the argument continues, since the primary perpetrator, Ramirez, was acquitted of burglary with assault and only convicted of simple burglary, the crime of burglary with an assault was not in fact committed and therefore, under the statute as amended, the petitioner himself cannot be convicted of any crime greater than simple burglary. In conclusion, petitioner's argument is that we should once again adopt the common law rule.
We disagree. First, after a due and diligent search we are unable to track down the illusory legislative intent relied upon by the petitioner. We are thus compelled to conclude that the reasons for the change were simply technical and designed to make the statute compatible with other sections of that chapter.[6] Therefore, we interpret that statute to mean that it is sufficient at the trial of the aider-abettor only to show that a crime was committed. In order to convict the aider-abettor it is not necessary to show that the principal perpetrator was convicted of the same crime, nor is it even necessary to show that he was convicted at all.
We now address petitioner's second argument which is harder to reject because it is based on policy. He asks that we adopt either a collateral estoppel rationale or "consistency of judgments approach." We realize that both are doctrines logically developed *903 and based on the appearance of equity and justice. We reject them, however, for several reasons.
We find illuminating the U.S. Supreme Court's opinion in Standefer v. United States, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). We are aware that that decision does not prevent a state from adopting a contrary position, but we feel that the reasoning is sound and compelling. That court refused to adopt the doctrine of non-mutual collateral estoppel in criminal cases because acquittals can result from many factors other than guilt or innocence, the procedural elements pertaining to one defendant can be totally different than those applying to another, and there is no procedure for retrying a defendant once acquitted even though the verdict might be clearly erroneous.
Finally, we are loath to adopt a rule requiring consistency of judgments even though at first blush it appears that we have forgotten the mandate that "justice must satisfy the appearance of justice." Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954). To adopt the consistency of judgment doctrine, however, is to trade one doctrine for another. This we refuse to do because what we gain is less than what we give up. To do so, in essence, is to invade the province of the jury which we decline to do.
The jury is the trier of fact and in weighing the evidence it decides if the requisite elements of a crime exist. To tell it what it must find in the trial of an aider or abettor is to take this function out of the hands of the jury. See Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982); Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976). In its ultimate wisdom it has been given the power to "temper ... justice with mercy."[7] If such be warranted, it can reduce the charge. This obviously was the result in Ramirez's trial. This is commonly known as jury pardon, and because that is one of the powers of this body of peers we will not disturb it. See, e.g. State v. Abreau, 363 So.2d 1063 (Fla. 1978); Lightfoot v. State, 331 So.2d 388 (Fla. 2d DCA 1976), cert. denied, 344 So.2d 326 (Fla. 1977).
We therefore hold that 1) this statute makes an aider or abettor, principals of the first or second degree, and accessories before the fact equally responsible for the entire transaction, and all are principals in the first degree; 2) the language added to the statute means that at the trial of the aider or abettor, accessory or principal, it is only necessary to show that there was an attempt to commit a crime or that a crime was committed during the transaction; and 3) if any of the perpetrators are tried in separate trials the judgments and sentences, even though inconsistent, are independent of one another and stand or fall on their own merits.
The decision of the district court is affirmed.
It is so ordered.
ADKINS, BOYD, OVERTON and McDONALD, JJ., concur.
ALDERMAN, C.J., concurs specially with an opinion, with which BOYD, J., concurs.
ALDERMAN, Chief Justice, concurring specially.
The majority concludes that the apparently inconsistent verdict in the trial of the codefendant, Ramirez, was the result of a "jury pardon" and that the petitioner in this case cannot benefit from the failure of the jury in Ramirez's case to do its duty. I agree. I concur specially, however, to once again restate my disapproval of the concept which has come to be known as the jury pardon.
Recently in my dissent to this Court's refusal to amend Florida Rule of Criminal Procedure 3.390(a) at the present time because it did not deem the matter to be an emergency matter necessitating consideration outside the regular four-year cycle, I expressed my concern with the concept of jury pardon and said:

*904 The deplorable phenomenon referred to by the Conference of Circuit Judges is the exercise by a jury of its power to return a verdict contrary to the evidence. In criminal cases, this abuse of power is irremediable because once the jury has wrongfully acquitted a defendant, its abuse of power may not be corrected on appeal. Just as there are individuals who disregard the law, there may also be juries that disregard the law. A jury that returns a verdict contrary to the evidence based on feelings of prejudice, bias, or sympathy is an "outlaw" jury, and its verdict will be a miscarriage of justice.
The Florida Bar, In re Amendment to Rules of Criminal Procedure  3.390(a), 416 So.2d 1126, 1126-27 (Fla. 1982).
BOYD, J., concurs.
NOTES
[1] Art. V, § 3(b)(3), Fla. Const.
[2] Ch. 1637(11), Laws of Fla. (1868).
[3] This law remained intact throughout the various codifications and finally ended up as sections 776.01 and 776.02, Florida Statutes (1941).
[4] § 776.011, Fla. Stat. (1957).
[5] Comm. Substitute for H.B. 2179, Florida Criminal Code, Ch. 74-383, Laws of Fla.
[6] The district court said in a footnote:

Because the amendment was enacted as part of the revision of the entire criminal code, it is difficult to glean the legislative intent. It may be that the words were added to extend the scope of the statute to attempted crimes or, alternatively, to differentiate from criminal solicitation which was first made a statutory crime in the same legislation. Ch. 74-383, Laws of Fla.
403 So.2d at 445 n. 2.
[7] J. Milton, Paradise Lost, in 32 Great Books of the Western World 276 (1952).