DANAHY, Judge,
dissenting.
While I agree this is not a double jeopardy case, I respectfully dissent on the issue of proof and, further, discuss the double jeopardy concerns because the majority unnecessarily recedes from Gordon.[4]
First of all, I would affirm both of St. Clair’s convictions because he was a principal to both of the seller’s crimes of delivery and possession. In his role of broker, St. Clair “stood in the shoes” of the seller and is, therefore, guilty of all crimes for which the seller is, or could be, convicted. The seller delivered one rock of cocaine to Evans, and, additionally, retained in his hand possession of the other rocks rejected by Evans when selecting a rock for purchase. Clearly, the seller committed the crime of delivery of the one rock sold, and, further, committed the crime of possession of the retained other rocks. Accordingly, St. Clair is deemed to have committed the same crimes. Additionally, precisely because there are different quanta of contraband, this case is not an appropriate vehicle to address double jeopardy issues under the mandate of Carawan[5] and thus not an appropriate vehicle to recede from Gordon because Gordon, like Carawan, was a double jeopardy case.[6] The issue as framed by the majority does not take into consideration the salient fact of the two quanta and, because of this, the majority arrives at an incorrect disposition. I would affirm the separate judgments of guilt entered upon the jury’s verdicts because there is a sufficient evidentiary and legal basis for them.
Second, even if this were a single-quantum/single-act case governed by Ca-rawan[7] and Gordon and 89-Smith, we should not recede from the rationale of Gordon because its certified question (asking if, under Carawan, dual convictions for the crimes there was a double jeopardy violation) was answered in the affirmative with a qualification by the supreme court in 89-Smith.[8] Although the Gordon rationale may not have been so directly affirmed as its result, subsequent cases from the supreme court, discussed infra, lead to the conclusion that its rationale was equally approved.
SEPARATE QUANTA — SEPARATE ACTS; APPLICATION OF THE PRINCIPALS STATUTE
The majority states that the basis for vacating St. Clair’s possession conviction is that there was no proof at trial that St. *247 Clair ever possessed cocaine. I respectfully disagree. There was proof that the actual seller[9] possessed cocaine and that St. Clair was the broker of the transaction. As such, the law of principals considers St. Clair as responsible for the drug crimes in the transaction as the perpetrator.
During the state’s case-in-chief, the confidential informant, Evans, testified. The state admitted, starting at voir dire, through opening and closing arguments and ending with the charge to the jury, that St. Clair never physically touched the contraband bought by Evans who was handed the contraband by the man in the car, the perpetrator. The state relied throughout on a theory of guilt by a principal pursuant to section 777.011, Florida Statutes (1987). According to Evans, the sequence of events was that he entered the area as an undercover agent for the police; rejected one offer because the rocks were too small; and was approached by St. Clair who told Evans that St. Clair could get him a twenty dollar rock. St. Clair then waved across the street to the perpetrator sitting in a car. In apparent acknowledgment of the wave, the perpetrator exited the car, crossed the street on foot, and came over to St. Clair and Evans who were near a vacant store. The perpetrator displayed several cocaine rocks in his hand, telling Evans to pick one out, which Evans did. Evans then gave the perpetrator a marked bill. During the actual sale, Evans said that St. Clair was “right there.” Evans further testified that after the sale was concluded the unidentified driver of the car in which the perpetrator had been sitting drove the car to the stop sign on the corner near them and the perpetrator got into the car. The driver then drove his passenger over to the vacant store near the place of sale; St. Clair walked over to the car and talked with the driver. Later that evening St. Clair was arrested and identified by Evans as the broker in the sale. The perpetrator, as far as we know, was never arrested for this sale or for anything having to do with this incident.
The law on culpability of principals is settled in Florida and allows the convictions of St. Clair to stand. The statute, section 777.011, Florida Statutes (1987), is quite clear in its scope:
777.011 Principal in first degree.— Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he is or is not actually or constructively present at the commission of such offense.
This statute was construed in Potts v. State, 430 So.2d 900 (Fla.1982), where the court outlined the history of the law of principals, both first and second degree principals and accessories before and after the fact. Potts was a case where the perpetrator had been pardoned by his jury for the crime of burglary with assault (by finding him guilty only of simple burglary) but where his aider and abettor, Potts, was found guilty of the burglary with assault by a different jury. The supreme court made three conclusions:
We therefore hold that 1) this statute makes an aider or abettor, principals of the first or second degree, and accessories before the fact equally responsible for the entire transaction, and all are principals in the first degree; 2) the language added to the statute [by amendment in 1974] means that at the trial of the aider or abettor, accessory or principal, it is only necessary to show that there was an attempt to commit a crime or that a crime was committed during the transaction; and 3) if any of the perpetrators are tried in separate trials the judgments and sentences, even though inconsistent, are independent of one another and stand or fall on their own merits.
Potts, 430 So.2d at 903 (emphasis added). The supreme court thus interpreted the *248 statute to mean that it is sufficient at the trial of the principal (here St. Clair) to show that a cohort committed, or attempted to commit, a crime or crimes within the criminal episode (here possession and delivery) and not necessary to show that the “principal perpetrator [the man in the car here] was convicted of the same crime, nor is it even necessary to show that he was convicted at all.” Id. at 902.
We often hear this concept of vicarious guilt under section 777.011 expressed as “stepping into the shoes of the perpetrator.” Potts, thus, requires that we search the record before us to determine whether there was sufficient evidence to convict St. Clair’s perpetrator of both possession and delivery. If there is such sufficient evidence, then St. Clair can be found guilty of the same crimes. It is at this point that the majority falls into the error of casting this case into the sphere of Gordon. Gordon’s facts consisted of only one rock of cocaine offered and accepted in the one act of sale. On the contrary here, Evans’ testimony showed that the perpetrator had several rocks of cocaine which he offered in his hand to Evans, but retained the remaining rocks of cocaine after Evans took the one he purchased. These facts put this case squarely under the controlling cases from this court which consistently hold that where there is a separate quantum of contraband retained, distinct from the quantum sold, a separate conviction for possession is proper. Newsome v. State, 543 So.2d 465 (Fla. 2d DCA 1989); Willingham v. State, 541 So.2d 1240 (Fla. 2d DCA 1989); Pelaez v. State, 541 So.2d 1211 (Fla. 2d DCA 1988); Leeks v. State, 529 So.2d 787 (Fla. 2d DCA 1988); Park v. State, 528 So.2d 524 (Fla. 2d DCA 1988).
In viewing the evidence presented at trial, this case is indistinguishable from New-some, Leeks, Willingham, Pelaez, and Park because the perpetrator retained rocks of cocaine which he did not sell to Evans. The jury obviously believed Evans’ testimony that the perpetrator sold and remained in possession of separate quantities of cocaine. If the perpetrator could have been convicted of both crimes because of the existence of two quanta of cocaine, Potts teaches that St. Clair can be held equally responsible for both crimes as well: delivery of the sold rock and possession of the retained rocks.
Only if possession of the retained rocks can be characterized as an independent (criminal) act can we determine that St. Clair is not a principal of the crime of possession, but only principal of the crime of sale. The only way St. Clair could be found not guilty of possession of the retained cocaine would be if there were a distinction, in substance and foreseeability, between the two crimes at issue; only then would St. Clair be isolated from further culpability for that “independent criminal act” as the law of principals denominates it.[10] See Rodriguez v. State, 571 So.2d 1356 (Fla. 2d DCA 1990) (two crimes committed were a robbery during which principal perpetrator committed a murder). Rodriguez discussed, as most cases do which deal with the principals statute, convictions under the felony murder rule:
It is settled law in this state that the felony murder rule and the law relating to principals combine to make a felon liable for the acts of murder committed by his co-felons in the furtherance of their joint felony. However, where there is evidence from which a jury could determine that the acts of the co-felons resulting in murder were independent of the joint felony, a defendant is entitled to an instruction that if the murder was such an independent act, not committed in furtherance of or in the course of the joint felony, the jury should find the defendant not guilty of felony murder. Bryant v. State, 412 So.2d 347 (Fla.1982).
Rodriguez v. State, 571 So.2d at 1357. Also citing to Bryant, this court has previously held that in a felony murder prosecution, it is not necessary that the accused be present at the time of the killing perpetrat *249 ed by a cohort if the homicide was “committed in furtherance of the common criminal scheme, or as a probable, predictable, reasonably foreseeable, or causally connected result of the underlying felony State v. Amaro, 436 So.2d 1056, 1061 (Fla. 2d DCA 1983) (emphasis added). In Amaro, a policeman was shot after the police moved in to arrest drug sellers in a home upon the signal of a confidential informer inside. The situation in Amaro was characterized as “an immediate, continuous, developing situation.” Id. The defendants in Amaro were found to be willing participants in the underlying drug felonies, and thus responsible for the results which came about from the “forces which they set in motion.” Id. So, too, in the case before us: St. Clair, acting as broker, set in motion the sale since he brought the buyer and the perpetrator together; after setting in motion this criminal transaction or episode, it was emmi-nently foreseeable that all of the cocaine possessed by the perpetrator would not be sold to Evans (since he had only asked for a twenty dollar rock). Thus, under the principles of Amaro and Potts, St. Clair was properly found guilty of the two crimes committed by the perpetrator — delivery and possession of the two separate quanta. The result reached by the majority — vacation of the possession conviction— is an incorrect disposition on the facts of this case and the applicable law.
THE LAW CONTROLLING THE CARAWAN WINDOW
Having outlined why I think the result in this case is incorrect, I write further to note that, even if the result were correct, we should not recede from our Gordon rationale. Because this case is within the Carawan window, a parallel must be drawn between the instant case and Gordon because Gordon was also within the Carawan window and was based purely on a Carawan analysis. To parallel the two cases, we must look only to the quantum of drugs sold in the instant case. To properly analyze the double jeopardy issue, we must ignore the quantum of drugs retained by the perpetrator because that is the distinctive separate act of possession.[11] Only by looking at the same quantum upon which the dual convictions of possession and delivery are based (the quantum actually sold), can we focus on the sole double jeopardy issue of Gordon and the reasons why the majority wishes to recede from it.
The majority apparently would recede from the rationale of Gordon but does not show under a complete Carawan analysis where that rationale is faulty. The analysis in Gordon carefully followed the mandate of Carawan in determining legislative intent concerning whether it was a violation of double jeopardy to convict for possession-with-intent-to-sell as well as sale of a single quantum of contraband in a single act. Carawan mandated that the statutory elements of the two crimes be analyzed to determine legislative intent without regard to the allegations of the charging instrument or the proofs adduced at trial. The majority opinion disregards Ca-rawan ’s mandate because of its insistence that the facts of the broker situation in the instant case somehow distinguish the kind of possession to be found here. To consider the broker situation under a complete Carawan analysis is to consider the allega-ta and the probata in contravention of Ca-rawan and section 775.021(4). Gordon, on the other hand, was a pure statutory elements analysis and attempted to reconcile unclear legislative intent (regarding what constituted a necessarily lesser included offense under the rubric of sale) with logic in determining the elements of a sale.
In its quest to determine the elements of a sale, Gordon used logical deductions as well as the principles enunciated in Cara-wan, without “regard to the accusatory pleadings or the proof adduced at trial” as section 775.021 directs. Gordon did refer to the jury instructions’ definition of a “sale” which does not specifically mention possession.[12] Although a review of the *250 pertinent standard jury instructions is sometimes instructive in determining lesser included offenses, those instructions are themselves not always determinative of the issue and have been found to be inadequate. State v. Dominguez, 509 So.2d 917 (Fla.1987). “While the Standard Jury Instructions can be of great assistance to the Court and to counsel, it would be impossible to draft one set of instructions which would cover every situation. The standard instructions are a guideline to be modified or amplified depending upon the facts of each case.” Yohn v. State, 476 So.2d 123, 127 (Fla.1985). The jury instructions in this context did not provide assistance in completing Gordon ’s double jeopardy analysis.
This court outlined in Gordon a progression by logical and elemental steps to arrive at the crime of sale:
Possession of contraband + intent to sell it
+ valuable consideration transferred
= a sale [13]
It appeared axiomatic that one could not sell that which one did not, in some legally cognizable way, possess. The majority quotes dicta from Gordon on the broker situation which Gordon used as a good example of such “legally cognizable possession” since a broker’s, i.e. principal’s, possession is deemed to exist by virtue of the perpetrator’s possession. The elements of sale and possession-with-intent-to-sell, which Gordon determined, are only what resulted from an analysis guided by logic and Carawan because the elements of these two crimes were not listed anywhere in the statutes.
I must disagree with the majority’s use of the broker theory of guilt while construing a statute pursuant to section 775.021(4) because, when the court looks to the allega-ta and probata, it intrudes itself into the domain of the prosecution. It is the prosecution’s role to charge a crime and then prove all the elements of that crime, in whatever fashion the facts lend themselves. If the prosecution must prove St. Clair’s possession of contraband during this episode (when he never actually handled the rocks), the legislature has provided section 777.011 so that, principals like St. Clair, who promote and assist criminal activity without being the actual perpetrator, will suffer for their actions. Chapter 777 is an alternative tool for the prosecution to use. The legislature has also provided criminal sanctions for other elements of the act of sale,[14] so that if a completed sale cannot be proven, there are other available avenues to convict and punish for what could be proven. Gordon was decided on a carefully limited and reasoned elements analysis, without regard to the allegations and proofs adduced at trial, was approved by the supreme court in 89-Smith, and has been followed by the trial courts of this district and by this court in numerous cases.[15]
Although the majority does not attempt to perform a complete Carawan analysis in pointing out Gordon’s errors, it attempts to justify receding from Gordon based upon several pr e-Gordon /pre-Carawan cases from this district (Dukes v. State, 464 So.2d 582 (Fla. 2d DCA 1985), Daudt v. State, 368 So.2d 52 (Fla. 2d DCA 1979), and Elias v. State, 301 So.2d 111 (Fla. 2d DCA 1974)), one pre-Gordon/pre-Carawan case from the supreme court (Smith v. State, 430 So.2d 448 (Fla.1983) [hereinafter 83-Smith ]), and one post-Gordon /pre-89-Smith supreme court case (State v. Daophin, 533 So.2d 761 (Fla.1988)). Suffice it *251 to say that the cases of Elias, Daudt or Dukes need not be discussed since they are either distinguishable on their facts or did not survive Carawan (as Gordon recognized in the case of Dukes; Elias and Daudt probably did not survive Carawan either). More important to the majority’s revisitation of the double jeopardy issue of Gordon are the supreme court cases of 83-Smith and Daophin, and several post-89-Smith supreme court cases. These most recent cases are State v. Parker, 551 So.2d 1209 (Fla.1989), State v. Burton, 555 So.2d 1210 (Fla.1989), State v. Hatten, 560 So.2d 1172 (Fla.1990), and Porterfield v. State, 567 So.2d 429 (Fla.1990). These cases provide at least a strong inference that the analysis of Gordon was approved by the supreme court in 89-Smith when it affirmed the result in Gordon and answered the certified question there in the affirmative.
The majority questions Gordon because it is inconsistent with the supreme court’s case of 83-Smith. The supreme court, in 83-Smith, held, without analysis, that under the 1979 version of section 775.021(4), a defendant could be dually convicted and sentenced for possession and sale of the same quantum of contraband in a single episode or transaction. The 1979 version of this statutory section did not contain the provision that: “For purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.” The statute controlling the Cara-wan window does contain this provision.[16] 83-Smith was not mentioned in the Gordon opinion undoubtedly because of the variation in the statute and the intervening case of Carawan which was at that time the most recent controlling case for guidance in Gordon.
In the present context, because 83-Smith also addressed the drug related crimes of sale and possession at issue in Gordon (actually, possession-with-intent-to-sell in Gordon), the issue that results from the majority’s reliance on 83-Smith then becomes: “Did 83-Smith survive Carawan to be still good precedent upon which to recede from Gordon ?” The answer to this question is “no” — 83-Smith did not survive Carawan as Gordon recognized sub silen-tio. The supreme court has also recognized this, if not in Gordon/89-Smith, then in its next four rulings on this issue.
In Parker, the supreme court simply reiterated that it had previously answered the same certified question in the affirmative in Gordon/89-Smith. The court approved the decision below which had applied Cara-wan as Gordon had done.
The supreme court’s second post-##Smith opportunity to reconsider the Gordon double jeopardy issue was Burton, which presented the same posture and used the same rationale as Gordon. Burton was taken up on conflict jurisdiction with 83-Smith. The supreme court again affirmed this court's conclusion, as in Gordon% —without analysis, citing to 89-Smith. Burton, 555 So.2d at 1211.
The supreme court took up a third case from this district, Hatten, also based on direct conflict with 83-Smith. Hatten, like Burton, was based on Gordon because of impermissible dual convictions of sale and possession of a single quantity in a single act. In its opinion the supreme court said:
We have for review Hatten v. State, 542 So.2d 1061 (Fla. 2d DCA 1989), due to asserted conflict with Smith v. State, 430 So.2d 448 (Fla.1983). We grant review pursuant to article V, section 3(b)(3) of the Florida Constitution, and approve the decision of the district court for the reasons stated in State v. Burton, 555 So.2d 1210 (Fla.1989).
It is so ordered.
Hatten, 560 So.2d at 1172.
I conclude from a review of just these three post-Gordon /post-89-Smith supreme court cases that Gordon was correctly analyzed in the face of 83-Smith.
*252 As a further indication of the supreme court’s approval of our Gordon rationale, it is necessary to discuss several Carawan -window cases from the first district which took issue with the analysis in Gordon. The first district rejected the analysis of Gordon and decided, in Wheeler v. State, 549 So.2d 687 (Fla. 1st DCA 1989), and Porterfield v. State, 553 So.2d 186 (Fla. 1st DCA 1989), that one could be dually convicted and punished for the crimes of sale and simple possession because sale and simple possession were located in different subsections of section 893.13; but that such dual convictions and sentences would not be permissible for possession-with-intent-to-sell and sale because these crimes were located in the same subsection of section 893.13. The supreme court took up Porterfield, and a companion case, Pollard v. State, 553 So.2d 770 (Fla. 1st DCA 1989), together for review under its conflict jurisdiction.[17] Pollard had been a one sentence affirmance based on 83-Smith and the first district’s own Wheeler. The supreme court quashed both of the first district’s holdings stating as its reason its own Burton opinion and quoted Burton’s citation to 89-Smith. In a footnote to its citation to Carawan in the text of its Porterfield opinion, the supreme court noted the following:
The First District Court, in both decisions [.Porterfield and Pollard], relied upon its previous decision in Wheeler v. State, 549 So.2d 687 (Fla. 1st DCA 1989). As the district court stated in Porterfield v. State, 553 So.2d 186, 187 (Fla. 1st DCA 1989),
This court’s position, as carefully considered and discussed in Wheeler, distinguishes between cases where the sentence and conviction is for both sale and possession under one subsection of the statute and cases involving sale and possession under two separate subsections of the same statute. We believe this position is the better reasoned one.

The First District Court’s position is at odds with the decision of this Court in State v. Smith, 547 So.2d 613 (Fla.1989).

Porterfield, 567 So.2d at 430, n. 2 (emphasis added.) In other words, the analysis of Wheeler is at odds with 89-Smith, which had no analysis on this issue[18] except to the extent that it approved our Gordon case which had only the in-depth analysis of this issue.
Admittedly, the supreme court’s Dao-phin opinion gives me pause in this analysis. I would point out, however, that Dao-phin answered a certified question on the accuracy of the jury instructions and did not complete a pure statutory elements analysis pursuant to Carawan; instead the discussion was based on the alternatives the prosecution may use to prove its case. Furthermore, because Daophin was decided before the supreme court considered Gordon in 89-Smith, any reasoning which conflicts with Gordon on the statutory elements would seem not to have survived 89-Smith. This appears to be so especially since one of the dissents in 89-Smith cited to Daophin, the dissent in Hatten cited to Daophin, and the dissent in Porterfield cited the same reason as in Hatten. Any reasoning expressed in Daophin refuting the rationale of Gordon or following 83-Smith seemingly failed to convince the majority in 89-Smith, Burton, Hatten and Porterfield which all rejected 83-Smith.
The lesson that the supreme court has provided in 89-Smith, Parker, Burton, Hatten and Porterfield is that Gordon is the proper law to apply in the Carawan window. The court today merely replows old ground which the supreme court has paved over with these cases.
In sum, I would affirm St. Clair’s convictions for possession and delivery of cocaine because of the separate acts under Cara-wan, and I would not recede from the *253 rationale of Gordon because I consider that it has met with approval by the supreme court.

. Gordon v. State, 528 So.2d 910 (Fla. 2d DCA 1988) [hereinafter Gordon ], affirmed sub nom, State v. Smith, 547 So.2d 613 (Fla.1989) [hereinafter 89-Smith ].

. Carawan v. State, 515 So.2d 161 (Fla.1987).

. The majority wishes only to recede from rationale in Gordon, but does not wish to disturb the result of Gordon which vacated the possession crime. So, too, in the instant case, if we were looking at only the one rock delivered, the majority would be correct in vacating St. Clair's possession crime because we must consider it to have been merged into the greater crime of delivery as Gordon explains. The facts, however, are otherwise, and thus make inapposite Carawan and its progeny including Gordon and 89-Smith which approved Gordon.

. This case is within the "Carawan window” which means that the principles of Carawan apply since the case arose before the effective date of section 775.021(4), Florida Statutes (Supp.1988). State v. Reddick, 568 So.2d 902 (Fla. 1990).

.The qualification was that the 1988 amendment to 775.021(4) was not to be retroactively applied. In effect, 89-Smith is the origin of the "Carawan window” since it set the date when the window closed. Accordingly, we deal here only in the context of section 775.021(4) before it was amended in 1988 because St. Clair’s crimes occurred prior to the effective date of the amendment. The effect of the total amendment on the analysis of necessarily lesser included crimes in chapter 893, Florida Statutes, remains unclear. See, Davis v. State, 560 So.2d 1231 (Fla. 5th DCA), jurisdiction accepted by 568 So.2d 435 (FIa.1990).

. For ease of discussion, I will refer to the seller, the man in the car, as the "perpetrator” since the testimony showed that he was the one who handled the contraband during the sale.

. This "independent criminal act" for purposes of the law of principals as stated in section 777.011 is to be distinguished from a "separate act" based upon the "separate quantum" for ■ purposes of a double jeopardy analysis under Carawan’s footnote 8.

. See footnote 8 in Carawan.

. The Florida Standard Jury Instructions in Criminal Cases (1987 ed.), page 219, provide the following definition of a sale: " 'sell' means to *250 transfer or deliver something to another person in exchange for money or something of value or a promise of money or something of value.” Gordon, 528 So.2d at 913.

. Compare Davis, 560 So.2d at 1234-39 (Co-wart, J., dissenting).

. Simple possession of contraband is in violation of section 893.13(l)(f) and the possession of the contraband with intent to sell it is in violation of section 893.13(l)(a), Florida Statutes (1987).

. Since Gordon was decided, we have cited it in, at last count, 64 cases.

. This provision incorporates the rule in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

. In these two cases, the jurisdiction was based on conflict with a prior supreme court case, article V, section 3(b)(3), Florida Constitution, as well as conflict with another district court case, article V, section 3(b)(4).

. The supreme court analyzed at great length the amendment to section 775.021(4) (which was passed by the legislature soon after Cara-wan was decided) before concluding that the amendment was not to be applied retroactively.