ON MOTION FOR REHEARING

DELL, J.
We deny rehearing, withdraw our opinion of July 18, 2001, and substitute the following opinion:
The state by indictment charged Andreu Gordon and appellant Edwin Suarez with *1051 premeditated murder. The defendants were tried separately. The jury found appellant guilty as charged and the court sentenced him to life imprisonment.
On the evening of March 12,1998, appellant, Gordon, Jesse Deal, Joseph Mahon, Raul Pina, Gina Pires, and two other women were in Pires’ apartment. Gordon and appellant both had guns, and Gordon had a fold-out type buck knife which he kept in a utility holster. On the morning of the 18th, appellant, Gordon, Deal, and Mahon left the apartment, got in a car, and drove off. One witness said that Gordon told Pina and the women not to let anybody in the apartment while they were gone; another witness said that appellant gave them the same instruction.
The victim, Nemo Almacazor, arrived at the apartment and Pina let him in. The victim was at the apartment for about 10 minutes when appellant’s car returned. At this point, all parties except Mahon were in, or made their way to, the back of the apartment where the bedroom and bathroom were located. A violent argument immediately ensued in the bathroom. Deal saw appellant and Gordon in the bathroom pointing their guns at the victim, and he saw Gordon shoot the victim in the head. Deal ran away. Pina, in the bedroom with the women, heard the gunshot and a thud. Appellant then came into the bedroom with his pistol in his hand. He told Pires he did not kill the victim, and put his gun to her nose, demanding that she smell the barrel. Appellant told Pina, who was hysterical, to get hold of himself, and told Pina and the three women “you didn’t see anything, did you.” Appellant then left the bedroom and went to the front of the apartment.
Mahon was outside when he heard the shot. Deal came running out, saying that Gordon had shot- someone, and ran away. Mahon saw appellant standing at the door with a gun in his hand, saying “We can fix this.” Mahon accompanied appellant into the apartment and to the bathroom. When he saw the body, he said, “There ain’t no fixing this.” While appellant was looking at the body, Mahon walked quickly out of the apartment, then ran.
Gordon told Pina to help him carry the wounded victim to the living room. While the victim was lying in the middle of the living room, appellant was by the front door, gun in hand. He chastised Gordon for his incompetence as a killer. Appellant then raised his gun and pantomimed shooting the victim. Pina testified that after making this gesture, appellant instructed Gordon to cut the victim’s throat:
Q. As best as you can recall, what was it that [appellant] said to [Gordon]?
A. Cut that throat.
Q. [Appellant] have anything in his hand at that point?
A. He had his gun by his side.
Q. Gordon have anything in his hands? A. Not at the time.
Q. After [appellant] says cut that throat, what does [Gordon] do?
A. Unholsters his knife, opens it up and cuts [the victim’s] throat.
Pina suggested that they wrap the body in a carpet which had been stripped out of the apartment earlier that week. He volunteered to go outside and get the carpet. Appellant told Pina not to run away, but as soon as he was outside, Pina ran. He could hear appellant saying “that bitch ran.” Pina ran to a telephone and called the police. After Pina left, Gordon told the women to go out and get the carpet. Appellant left, saying he was going after Deal and Mahon. The women dragged the carpet in, and with Gordon’s assistance wrapped the victim in it.
The medical examiner testified that her opinion as to the cause of death was a gunshot wound to the head and sharp. *1052 force trauma to the neck. The gunshot wound was irreversibly fatal. The sharp force trauma to the neck was potentially fatal without medical treatment, but not immediately so. As to cause of death, she could not separate the two injuries. Although the neck wound was treated in the hospital, the medical examiner would not testify that the neck wound did not kill the victim, because she did not know how much blood he had lost at the scene. She also could not determine how much blood the victim had lost from each wound. The victim’s blood pressure was very low when he arrived at the hospital.
Appellant contends that the trial court erred in denying his motion for judgment of acquittal, by failing to investigate prose-cutorial misconduct, and by failing to give the jury an independent act instruction. We affirm.
First, appellant has failed to show that the trial court erred when it denied his motion for judgment of acquittal.
A defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. The courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. Where there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the Court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail and not primarily the views of the judge.
Lynch v. State, 293 So.2d 44, 45 (Fla.1974). Here, the record contains more than sufficient evidence to support the trial court’s denial of appellant’s motion for judgment of acquittal.
Next, appellant argues that the trial court erred by failing, on its own motion, to investigate prosecutorial misconduct after a State’s witness testified that she was told by “the prosecutor” [1] that she would be charged with perjury if she did not testify “at trial” consistently with a taped statement made to the police during the investigation. On the night of the crime, the police interviewed the witness, who told them that appellant had made an incriminating statement. Later, however, the witness maintained that she could not remember appellant’s incriminating statement. The prosecutor responded by telling the witness that she would be prosecuted for perjury if she did not testify consistently with her previous statement. The record shows that notwithstanding this alleged threat, the witness was not influenced because she stated at all subsequent interviews, and at appellant’s trial, that she could not remember appellant’s incriminating statement. Appellant has failed to show that he was prejudiced by the alleged threat. We therefore hold that the trial court’s failure to make inquiry, on its own initiative, concerning the prosecutor’s comments, did not constitute fundamental or reversible error.
Finally, appellant contends that he was entitled to an independent act instruction. His theory of defense was that the murder was “solely the act of wacky Andreu Gordon,” who went suddenly and unexpectedly *1053 wild. He further argues that even if his statements after the shooting could be interpreted as inciting Gordon to cut the victim’s throat, the gunshot wound was the fatal injury and, therefore, his acts did not contribute to the victim’s death and were legally insignificant. Appellant’s argument does not address the medical examiner’s testimony that she could not differentiate between the gunshot wound to the head and the slashed throat as the cause of death.
A defendant is entitled to have the jury instructed on the law applicable to his theory of defense. However, no instruction is necessary where there is no evidence to support the theory. Ray v. State, 755 So.2d 604 (Fla.2000).
The “independent act” doctrine arises when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofelon, “which fall outside of, and are foreign to, the common design of the original collaboration.” Dell v. State, 661 So.2d 1305, 1306 (Fla. 3d DCA 1995) (quoting Ward v. State, 568 So.2d 452 (Fla. 3d DCA 1990)). Under these limited circumstances, a defendant whose cofelon exceeds the scope of the original plan is exonerated from any punishment imposed as a result of the independent act. Id. See also Parker v. State, 458 So.2d 750 (Fla.1984). Where, however, the defendant was a willing participant in the underlying felony and the murder resulted from forces which they set in motion, no independent act instruction is appropriate. See Lovette v. State, 636 So.2d 1304 (Fla.1994); Perez v. State, 711 So.2d 1215 (Fla. 3d DCA), review denied, 728 So.2d 204 (Fla.1998), and cert. denied, 526 U.S. 1120, 119 S.Ct. 1772, 143 L.Ed.2d 801 (1999); State v. Amaro, 436 So.2d 1056 (Fla. 2d DCA 1983). We find that both Ray and Hall were participants in the robbery and the murder resulted from forces they set in motion; therefore, no independent act instruction was warranted.
Id. at 609.
Standard jury instruction 3.04(h) provides in pertinent part:
An independent act occurs when a person other than the defendant commits or attempts to commit a crime
1. which the defendant did not intend to occur, and
2. in which the defendant did not participate, and
3. which was outside of and not a reasonably foreseeable consequence of the common design or unlawful act contemplated by the defendant.
In re Standard Jury Instructions in Criminal Cases (97-1), 697 So.2d 84, 96 (Fla.1997).
Here, the evidence shows that appellant and Gordon acted together to accomplish the death of the victim. The evidence also shows that Gordon cut the victim’s throat after appellant verbally taunted him with his incompetence as a killer, made a gesture to pantomime shooting the victim a second time, and made the statement “Cut that throat.” Appellant also actively participated in the efforts to conceal the crime, including directing the disposal of the body. We therefore hold that the evidence presented does not support appellant’s independent act defense.
Accordingly, we affirm appellant’s conviction of first-degree premeditated murder.
AFFIRMED.
STEVENSON and GROSS, JJ„ concur.

. The record reveals that the prosecutor who allegedly threatened the witness was not the prosecutor in this case, but the person who prosecuted Gordon. The alleged threat was made during the course of Gordon’s trial proceedings.